# 2003 DTA 139

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL V DE PONCE Y AIBONITO

CARMEN R. BONAPARTE
ERIC R. ROSALY TORRES
*Ex parte*
Recurridos

v.

ROSALY, OCASIO AUDITING &
CONSULTING GROUP, PSC
Parte Interventora
Peticionaria

Núm. KLCE-03-00999

San Juan, Puerto Rico, a 26 de agosto de 2003

Panel integrado por su Presidente, Juez Brau Ramírez,
el Juez Aponte Hernández y la Jueza Pabón Charneco

Pabón Charneco, Jueza Ponente

## TEXTO COMPLETO DE LA RESOLUCION

Comparece ante nos Rosaly, Ocasio Auditing & Consuting, en adelante, la peticionaria, solicitando la revisión del dictamen emitido por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante el mismo, el tribunal *a quo* denegó una *"Moción Urgente de Intervención, Reconsideración y Solicitud de Orden Protectora"* presentada por la peticionaria.

Por las razones que esbozamos a continuación, se deniega el auto solicitado.

**I**

Conforme surge del recurso ante nuestra consideración, los recurridos de epígrafe, Carmen R. Bonaparte Fortuño y Eric R. Rosaly Torres, presentaron petición jurada de divorcio por consentimiento mutuo ante el Tribunal Superior de Puerto Rico, Sala Superior de Caguas. El 31 de marzo de 1992, mediante Sentencia emitida, se disolvía el vínculo matrimonial existente entre los recurridos. En la misma, se condenaba al padre no custodio, Eric Rosaly Torres, a satisfacer la suma de $600.00 mensuales por concepto de pensión alimentaria a favor de la menor, Erika Rosaly Bonaparte, hija de los recurridos.

En junio de 2000, Carmen Bonaparte Fortuño, en adelante, señora Bonaparte, solicitó el traslado del caso a la Sala Superior de Ponce y la revisión de la pensión alimentaria establecida a favor de la menor. Concedido el traslado, la señora Bonaparte presentó escrito intitulado *"Moción de Desacato por Incumplimiento en el Pago de la Pensión Alimentaria"*. En dicho escrito, alegó que a pesar del divorcio las partes continuaron viviendo juntos hasta el mes de agosto de 1996. Habiendo transcurrido cuatro (4) años desde su divorcio, los recurridos acordaron aumentar la pensión alimentaria de la menor a la cantidad de $800.00 mensuales, a los cuales se les sumaría el pago anual que debía realizarse al Colegio Caribbean School donde estudia la niña.

Adujo, además, que llegado el mes de junio de 1997 acordaron modificar el pago de la pensión a $1,000.00 mensuales, $800.00 de la *"pensión regular"* y $200.00 adicionales para el pago del Colegio, en vez del pago total de la anualidad. Alegó que el señor Rosaly siempre había cumplido, aunque tardíamente, con su obligación alimentaria. No obstante, entrado el año 2001, había iniciado un patrón de incumplimientos. En consecuencia, solicitaba se encontrara al señor Rosaly incurso en desacato y, una vez sumariado, no fuera puesto en libertad hasta que abonara la suma adeudada ascendente a la cantidad de $16,504.71 por concepto de pensión alimentaria, más $1,000.00 por honorarios de abogado.

El señor Rosaly se opuso a la solicitud de desacato presentada por la señora Bonaparte e impugnó la existencia de la deuda alegada, así como los supuestos aumentos en pensión acordados por las partes. Trabada la controversia, el foro de instancia pautó vista para la discusión de la solicitud de desacato, a celebrarse el 31 de enero de 2002. Celebrada la misma, el tribunal *a quo* entendió que la pensión en propiedad establecida por un magistrado a favor de la menor era de $600.00, por lo que procedió a ajustar las cantidades reclamadas, sin reconocer un crédito por las cantidades pagadas en exceso. A tales efectos, concluyó que el señor Rosaly adeudaba la cantidad de $7,800.00. El magistrado de instancia le concedió un plazo de diez (10) días para cumplir con el pago de la obligación o, de lo contrario, sería encontrado incurso en desacato. Inconforme, el señor Rosaly solicitó la revisión del dictamen. No obstante, posteriormente, optó por acogerse al plan de pagos.

Consumada la obligación alimentaria, el 4 de septiembre de 2002, la señora Bonaparte solicitó un aumento en la pensión asignada a la menor. En la solicitud de aumento alegó que las necesidades de la alimentista habían aumentado y que el padre alimentante gozaba de los recursos necesarios para suplir las mismas.

Así las cosas, utilizaron los mecanismos de descubrimiento de prueba.

Oportunamente, la señora Bonaparte presentó una *"Moción en Solicitud de Orden"* en la que alegó que, estando en controversia la capacidad económica del alimentante, de conformidad con la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, conocida como *"Ley Orgánica de la Administración para el Sustento de Menores"*, ▮ se requería la expedición de una orden dirigida al patrono y/o entidad que haya obtenido servicios del alimentante para que produjera la siguiente información:

*"Copia de todos y cada uno de los contratos de servicios profesionales del SR. ERIC ROSALY TORRES, 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, ROSALY, OCASIO AUDITING AND CONSULTING GROUP, PSC y/o a cualquier compañía, sociedad, corporación, o entidad a la que él pertenezca, desde el año 2000 hasta el presente.*

*Certificación desde el año 2000 hasta marzo de 2003, por separado, de la totalidad de los ingresos, salarios, comisiones, ganancias, beneficios, compensación por servicios personales o profesionales o por contratos, jornales, rendimiento o frutos devengados por ERIC ROSALY TORRES, 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, y ROSALY, OCASIO AUDITING AND CONSULTING GROUP, PSC y/o a cualquier compañía, sociedad, corporación, o entidad a la que él pertenezca, a partir del año 2000, incluyendo, pero no limitado a: compensaciones por contratos, servicios profesionales, salario bruto, comisiones, dietas, millaje, bonificaciones, bonificaciones por horas extras, pagos por viajes fuera de la jornada regular de trabajo, beneficios marginales, deducciones, vacaciones, bono, suma para gastos especiales, etc.*

*Certifique la fecha exacta desde la cual ERIC ROSALY TORRES, 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, ROSALY, OCASIO AUDITING AND CONSULTING GROUP, PSC y/o a cualquier compañía, sociedad, corporación, o entidad a la que él pertenezca realiza para su compañía labores por las que devenga ingresos, salarios, comisiones, ganancias, beneficios, compensación por servicios personales o profesionales, jornales, rendimiento o fruto. Detalle todas las posiciones que ha ocupado y las labores que realiza. Acredite y acompañe prueba documental para demostrar lo anterior.*

*Copia de todos las formas de retención 480.6, 499R-2/W2pr o su equivalente aplicable enviadas al Departamento de Hacienda o a ERIC ROSALY TORRES, 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, ROSALY, OCASIO AUDITING AND CONSULTING GROUP, PSC. y de cualquier compañía, sociedad, corporación, o entidad a la que él pertenezca a partir del año 2000 hasta el presente.*

*3. La orden será dirigida a las compañías relacionadas y a cualquier otro ente aun no relacionado en esta lista:*

*CONTRALOR DE PUERTO RICO, MANUEL DIAZ SALDAÑA, ADMINISTRACION DE DESPERDICOS SOLIDOS*
*DEPARTAMENTO DE HACIENDA*
*FRATICELLI TRUCKING*
*AUTOCENTRO DEL SUR, INC. Y AFILIADOS*
*CARIBBEAN IRRIGATION*
*HOSPITAL EPISCOPAL CRISTO REDENTOR*
*ROBERTO BACO & ASOCIADOS*
*HOGAR EDIFICIO JOSEFINA VASALLO*

*.....".*

El señor Rosaly, por su parte, se opuso a la solicitud de orden presentada por la señora Bonaparte. Alegó que Rosaly, Ocasio Auditing & Consulting, PSC, es un ente independiente con personalidad jurídica propia, la cual no había sido incluida como parte en el pleito. Por consiguiente alegó que el tribunal *a quo* carecía de jurisdicción para intervenir con la misma. Arguyó que cualquier orden emitida contra la Corporación con el fin de obtener información financiera de ésta violentaría su derecho constitucional al debido proceso de ley. Asimismo, señaló el señor Rosaly que nunca se había negado a descubrir la información económica que sobre su persona solicitara la señora Bonaparte. Por consiguiente, entiende innecesaria e impertinente la indiscriminada intromisión en los archivos de la Corporación.

No empece los argumentos esgrimidos por el señor Rosaly, el Tribunal de Primera Instancia emitió dictamen declarando Con Lugar la *"Moción en Solicitud de Orden"* presentada por la señora Bonaparte. ■

Así las cosas, la Corporación solicitó al tribunal *a quo* que le permitiera intervenir en el pleito. Alegó que la tramitación del mismo amenazaba con afectar la relación de negocio de ésta y sus clientes, lo cual, directamente trastocaba los intereses de la empresa. Asimismo, solicitó la reconsideración de la orden emitida y una solicitud de orden protectora. Tal moción no fue acogida por el foro de instancia dentro del término dispuesto en la Regla 47 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 47.

Inconforme con dicho dictamen recurre ante nos solicitando la revisión de la Orden emitida. Junto con su recurso presentó una *"Solicitud de Intervención y en Auxilio de Jurisdicción"*. Contando con el beneficio de la posición de la señora Bonaparte, procedemos a resolver.

## II

En su escrito, la peticionaria plantea que incidió el Tribunal de Primera Instancia al considerar que los ingresos de una corporación, que no es parte en el pleito sobre alimentos, están sujetos a descubrimiento de prueba por considerar los mismos pertinentes a la controversia; y al determinar que los ingresos de una Corporación son parte de los ingresos de uno de sus accionistas a la hora de computar y determinar la pensión alimentaria que éste debe satisfacer.

## III

Es norma reiterada la que establece la importancia de que el descubrimiento de la prueba sea amplio y liberal. El propósito primordial del mismo es que aflore la verdad de lo ocurrido evitando así los inconvenientes, sorpresas e injusticias que surgen cuando las partes ignoran hasta el día del juicio las cuestiones y los hechos que en realidad son objeto del litigio. *Medina v. M.S.& D. Química P.R. Inc.*, 135 D.P.R. 716, 730 (1994); *Sierra v. Tribunal Superior*, 81 D.P.R. 554, 560 (1959). Un descubrimiento de prueba amplio y abarcador es la médula del esfuerzo, por destruir, de una vez y para siempre, la deportiva teoría de justicia que tanto mina la fe del pueblo en el sistema judicial. *Aponte v. Sears Roebuck de P.R., Inc.*, 129 D.P.R. 1042, 1049 (1992); *Luch v. España Service Sta.*, 117 D.P.R. 729, 743 (1986); *Ades v. Zalman*, 115 D.P.R. 514, 517 (1984). Véase también, *Alvarado v. Alemañy*, 157 D.P.R. ___ (2002), **2002 J.T.S. 98**.

De conformidad con la Regla 23.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 23.1, el descubrimiento de prueba sólo tiene dos (2) limitaciones, a saber: que la información objeto del descubrimiento no sea privilegiada, y que la misma sea pertinente al asunto en controversia.

El término privilegiado se refiere exclusivamente a los privilegios que reconocen las reglas de evidencia. *Rivera Alejandro v. Algarín,* 112 D.P.R. 830 (1982). Por tanto, en ausencia de un privilegio específico reconocido por nuestro ordenamiento jurídico, no procede objeción alguna a un descubrimiento de prueba bajo ese fundamento.

En relación con el concepto de pertinencia, éste es mucho más amplio que el empleado en el área del derecho probatorio para la admisibilidad de la prueba. *García Rivera et al. v. Enriquez*, 153 D.P.R.___ (2001), **2001 JTS 15**; *Medina v. M.S.&D. Química P.R. Inc.*, *supra; Ortiz Rivera v. E.L.A., National Ins. Co.*, 125 D.P.R. 65 (1989); *General Electric v. Concessionaires Inc.,* 118 D.P.R. 32 (1986). Así, para que una materia pueda ser objeto de descubrimiento, basta con que exista una posibilidad razonable de que tenga relación con el asunto en controversia. *Medina v. M.S.& D. Química P.R. Inc.*, *supra; Rodríguez v. Scotiabank de P.R.,* 113 D.P.R. 210 (1982). Es decir, se admite el descubrimiento de todos los asuntos que puedan tener cualquier relación posible con la materia que es objeto del litigio, aunque no estén relacionados con las controversias específicas que han sido esbozadas en las alegaciones. Basta que exista una posibilidad razonable de relación con el asunto en controversia. En virtud de lo anterior, el descubrimiento de prueba permite, inclusive, la entrega de materia que sería inadmisible en el juicio, si ésta conduce a prueba admisible. *García Rivera et al. v. Enriquez, supra; Alvarado v. Alemany, supra.* Por tanto, no será objeción válida el que la información solicitada sea inadmisible en el juicio. *Id.*

De ahí, que el concepto de pertinencia para los propósitos del descubrimiento de prueba se interprete de forma más amplia que el utilizado en las Reglas de Evidencia. *García Rivera et al. v. Enriquez, supra.*

No obstante, el descubrimiento de prueba no es uno ilimitado. El tribunal puede limitar el alcance y los mecanismos de descubrimiento de prueba a utilizarse, siempre que con ello se adelante la solución de controversias de forma rápida, justa y económica. Las reglas establecen el mecanismo de la orden protectora, con el propósito de proteger a la parte o persona con relación a la cual se utiliza el descubrimiento de hostigamiento, perturbación u opresión, así como cualquier gasto o molestia indebida. *Alfonso Brú v. Trane Export, Inc.,* 155 D. P.R. ___ (2001), **2001 J.T.S. 132.** Véase, además, Regla 23.2 de las de Procedimiento Civil, *supra.*

Por otro lado, como se sabe, el derecho de los hijos a recibir alimentos, y la correlativa obligación de los padres a darlos cuando corresponda, tienen su génesis en el derecho natural, en los lazos indisolubles de solidaridad humana y de profunda responsabilidad de la persona por los hijos que trae al mundo, que son valores de la más alta jerarquía ético-moral y que constituyen una piedra angular de toda sociedad civilizada. Torres Peralta, *La ley Especial de Sustento de Menores y el Derecho de Alimentos en Puerto Rico*, 1997, pág. 1.1. Son, además, derechos y obligaciones que surgen del derecho constitucional a la vida. *Rodríguez v. Depto. de Servicios Sociales*, 132 D.P.R. 617 (1993); *Negrón Rivera y Bonilla, Ex Parte*, 120 D.P.R. 61 (1987); *Rodríguez Avilés v. Rodríguez Beruff*, 117 D.P.R. 616 (1986). Por lo que están revestidos del más alto interés público. *Rodríguez v. Depto. Servicios Sociales, supra*; *Robles v. Otero de Ramos*, 127 D.P.R. 911 (1991); *López v. Rodríguez*, 121 D. P.R. 23 (1988). Véase, además, el Art. 3 de la Ley Núm. 5, *supra*, 8 L.P.R.A. sec. 502. ■ *Arguello v. Arguello*, 155 D. P. R. ___ (2001), **2001 J.T.S. 127**.

La obligación de los padres de proveer alimentos a sus hijos tiene también varias fuentes estatutarias. *Guadalupe Viera v. Morell*, 115 D.P.R. 4, 14 (1983). Pero el fundamento medular de todas ellas es la relación paterno-filial. *Id.*

Se entiende por alimentos todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia. Los alimentos comprenden también la educación e instrucción del alimentista, cuando es menor de edad. Art. 142 del Código Civil, 31 L.P.R.A. sec. 561. Ello incluye tanto las necesidades físicas como intelectuales del alimentista. *Viera v. Morell*, 115 D.P.R. 4 (1983); *Negrón Rivera y Bonilla, Ex parte, supra*; *Ríos Rosado v. Vidal Ramos*, 134 D.P.R. 3 (1993). El concepto de educación e instrucción abarca los estudios cursados en escuela elemental, escuela superior y en la universidad o escuela vocacional. Torres Peralta, *supra*, pág. 1.25. *Arguello v. Arguello, supra.*

Para determinar el monto de la obligación del alimentante, hay que tomar en cuenta que en los casos en que hay más de un alimentante procede repartir entre ellos el pago de la pensión en cantidad proporcionada a su caudal respectivo. Art. 145 del Código Civil, 31 L.P.R.A. sec. 564. Por su parte, el Art. 146 del Código Civil, 31 L.P.R.A. sec. 565, establece la manera de determinar el monto de la pensión: La cuantía de los alimentos será proporcionada a los recursos del que los da y a las necesidades del que los recibe, y se reducirán o aumentarán en proporción a los recursos del primero y las necesidades del segundo. *Arguello v. Arguello, supra.*

Por su parte, para determinar la capacidad económica de cada alimentante, es preciso tomar en cuenta todos los ingresos devengados por éste, hasta los que no aparezcan informados en la Planilla de Información Personal. *Rodríguez Rosado v. Zayas Martínez*, 133 D.P.R. 406 (1993). El tribunal de instancia no está limitado a considerar sólo la evidencia testifical o documental sobre los ingresos. Puede, al fijar la cuantía de la pensión, considerar aspectos tales como el estilo de vida que lleva el alimentante, su capacidad para generar ingresos, la naturaleza y cantidad de las propiedades con que cuenta, la naturaleza de su empleo o profesión y sus otras fuentes de ingreso. *López v. Rodríguez, supra*; *Arguello v. Arguello, supra.*

En *López v. Rodríguez, supra*, incluso se estableció que el foro de instancia debe tomar en cuenta en estos casos la realidad de la economía subterránea que prevalece en Puerto Rico. En particular, se hizo referencia a que en el país muchos profesionales y personas con negocios propios incurrían en la práctica de declarar fiscalmente sólo parte de los ingresos reales que tenían. El Tribunal Supremo *indicó* en ese caso que esta realidad debía tomarse en cuenta en reclamaciones sobre alimentos. *Arguello v. Arguello, supra.* ■

## IV

Dentro del marco jurídico antes enunciado procedamos a resolver la controversia de autos.

La Corporación alega que incidió el foro de instancia al considerar que está sujeta a los mecanismos de descubrimiento de prueba aun cuando no es parte en el pleito.

La controversia suscitada por la peticionaria, en su primer señalamiento de error, ya ha sido dilucidada por el Tribunal Supremo en *Alvarado v. Alemañy, supra.* En tal caso, el Supremo expresó que nuestro ordenamiento jurídico permite el uso de los mecanismos de descubrimiento de prueba contra un Corporación que no es parte en el pleito, pero cuyo accionista sí es parte en el pleito. Lo anterior sujeto, claro está, a que la información solicitada cumpla con lo dispuesto en la Regla 23.1 de las de Procedimiento Civil, *supra.*

Sobre lo anterior, no cabe dudas que la información solicitada es pertinente para establecer la capacidad económica del alimentante para suplir las necesidades de la menor. Debemos tomar en consideración que siendo el alimentante dueño del cincuenta por ciento (50%) de las acciones de la Corporación y representando la misma la fuente primordial de sus ingresos, toda información pertinente al estado financiero de la Corporación se traduce en información relacionada a la solvencia económica del alimentante. Más aún, si se consideran las expresiones del Tribunal Supremo en *Arguello v. Arguello, supra,* a los efectos, de que existe una economía subterránea producto, entre otras cosas, de la evasión contributiva de diversos entes económicos, resulta aún más pertinente la utilización de métodos externos a la Corporación para proyectar la verdadera cuantía de los dividendos recibidos por sus accionistas. Entendemos, pues, adecuada la expedición de la orden impugnada. La misma cubre materia pertinente, no privilegiada, relacionada a una parte en el litigio, tendente a establecer la capacidad económica real del padre no custodio para suplir las necesidades alimentarias de su hija menor de edad. El error no fue cometido.

En lo que respecta al segundo señalamiento de error de la peticionaria, el mismo es igualmente inmeritorio. Nada nos induce a pensar que el tribunal *a quo* está equiparando los ingresos de la Corporación con los del señor Rosaly. Surge claramente del recurso que el señor Rosaly es, entre otros, accionista de la Corporación dedicada a ofrecer servicios de contaduría. Así mismo se desprende que éste, en calidad de Contador Público Autorizado, rinde sus servicios a través de la Corporación. Por lo que sus ingresos, si bien son el resultado de los ingresos de la Corporación, no son equivalentes a los de la última. La Corporación, como entidad jurídica separada de sus accionistas, tiene sus propios gastos, deudas, inversiones de capital y demás. Estas disminuyen el estipendio o dividendo que obtiene el señor Rosaly como accionista de la Corporación. No obstante, no surge del recurso que la señora Bonaparte o el tribunal *a quo* pretendan imponerle a la Corporación el pago de la obligación alimentaria.

## V

Por las razones arriba esbozadas, se deniega la expedición del recurso. Asimismo, se deniega la "*Solicitud de Intervención y en Auxilio de Jurisdicción*" presentada por la peticionaria.

Así lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2003 DTA 139**

**1.** 8 L.P.R.A. secs. 501 *et seq.*

**2.** Cabe señalar que, en el ínterin, se celebró una vista ante el Oficial Examinador de Pensiones Alimentarias quien recomendó, previo a estipulación convenida entre las partes, la imposición de una pensión alimentaria provisional de $1,005.00 y ordenó la presentación de las respectivas Planillas Informativas en un plazo de diez (10) días. El señor Rosaly cumplió con la orden emitida, no así la señora Bonaparte.

**3.** La Ley Núm. 5, *supra*, tiene como propósito lograr que los padres o las personas legalmente responsables contribuyan, en proporción a sus recursos, al sostenimiento y bienestar de sus hijos o dependientes de acuerdo a sus necesidades, de la manera en que está consagrada tal obligación en el Código Civil. La ley propende el fortalecimiento de los sistemas y la agilización de los procedimientos administrativos y judiciales para la determinación, recaudación y distribución de las pensiones alimentarias. Véase el artículo 4 de la Ley Especial para el Sustento de Menores, *supra*.

En la nota al calce número 12 de *López v. Rodríguez, supra*, pág. 32, se expresó lo siguiente:

"*Al hacer la determinación sobre los ingresos de un alimentante también debe tomarse en consideración lo expresado en el Informe del Secretario de Hacienda sobre Reforma Contributiva de agosto de 1987, sobre la economía subterránea que prevalece en Puerto Rico:*

*Según el estudio de Booz-Allen & Hamilton, el total del ingreso no declarado en Puerto Rico -conocido por economía subterránea- asciende a $2,500 millones al año lo que representa un 17% del ingreso bruto personal. De este total unos $1,500 millones corresponden a personas que no declaran ingreso alguno y unos $1,000 millones a personas que declaran parte pero no todo su ingreso. El estudio confirma además, que el mayor grado de evasión proviene de personas con negocios propios, seguidos por varios grupos de profesionales y, finalmente, por algunos contribuyentes asalariados.*"